IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

CHRIS L. SALEK,

            Plaintiff,

Vs.                                                  No.  11-2585-SAC

RELOAD, INC., RELOAD EXPRESS,
INC., WATCO MECHANICAL
CORP. and PHILLIP A. PENNER,

            Defendants.

MEMORANDUM AND ORDER

The case comes before the court on the defendant Phillip A. Penner's motion to dismiss (Dk. 20) this matter against him for failure to state a claim upon which relief may be granted.  The court also will decide the plaintiff's motion to strike the second affirmative defense entitled "waiver" pleaded by the defendants, Reload, Inc., Reload Express, Inc.,[1] and Watco Mechanical Corp. ("Watco") (Dk. 26).  Fully briefed, both motions are ripe for decision.

This action arises from events occurring after Watco's 2008 purchase of Reload, a freight transloading business, from its co-owners, the plaintiff Chris L. Salek ("Salek") and the defendant Phillip A. Penner ("Penner").  Salek alleges that the terms of the stock purchase agreement

---

[1]For purposes of this motion, the court will refer to both corporations together as "Reload."

("SPA") directed a one-time cash payment to him and Penner with potential "earn out payments" over time if Reload's annual earnings met or exceeded certain levels.  Amendments to the SPA in 2009 increased Salek's and Penner's potential earn-out payments.  Reload executives and employees worked on Watco's planning and building of a new transloading facility in Oklahoma City, Oklahoma, ("Oklahoma City facility") that began operations in mid-2008.  Reload executives and employees also planned and worked on providing transloading services for EOG Resources, Inc.'s new crude oil facilities at Stanley, North Dakota, and at Stroud, Oklahoma, ("Stanley and Stround facilities").

For purposes of calculating the earn-out payments for the year ending December of 2010, Watco included the earnings before interest, taxes, depreciation, and amortization ("EBITDA") made at the Oklahoma City facility.  Salek alleges that Watco also should have included the EBITDA earned from the Stanley and Stroud facilities but instead buried these earnings in a newly named division called "Transload."  Salek further alleges that after the SPA, Penner and Watco entered into a side agreement for earn-out payments as part of a scheme to cheat Salek out of his earn-out payments.

Salek brings two claims against the defendants Watco and Reload.  Count one alleges these defendants breached the SPA and its

2

amendment by failing to include the EBITDA from the Stanley and Stroud facilities in the calculations of his earn-out payments and also breached the implied duty of good faith and fair dealing by engaging in the same conduct and by entering into a side agreement with Penner to cheat Salek of his earn-out payments.  Count two seeks a declaratory judgment against these same defendants that the EBITDA from the Stanley and Stroud facilities and other transloading facilities should be included in Salek's earn-out payment calculations under the agreements.  Finally, count three asserts a breach of fiduciary duty claim against the defendant Penner by entering into a side agreement from which he received earn-out payments and worked with other defendants in carrying out a scheme to cheat Salek out of his earn-out payments.

**MOTION TO DISMISS STANDARDS**

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's . . . complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).   The court accepts all well-pled factual allegations as true and views these allegations in the light most favorable to the nonmoving party. *United States v. Smith*, 561 F.3d 1090, 1098 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 1142 (2010).  The court, however, is not under a duty to

accept legal conclusions as true.  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868, 884 (2009).  "Thus, mere 'labels and conclusions' and 'formulaic recitation of the elements of a cause of action' will not suffice."  *Khalik v. United Air Lines*, ---F.3d---, 2012 WL 364058, at *2 (10th Cir. Feb. 6, 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

> The Supreme Court recently clarified the focus of such motions:
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Id.* [*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.*  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557.

*Ashcroft v. Iqbal*, 129 S.Ct. at 1949.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949.  "[C]ourts should look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief."  *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 n.2 (10th Cir. 2007).  If the allegations "are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"  *Robbins v. Oklahoma*

4

*ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).

The Tenth Circuit has observed that "[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). The Supreme Court in *Iqbal* similarly noted that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common-sense." 129 S. Ct. at 1950. "While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik*, 2012 WL 364058, at *3 (citations omitted). "But because dismissal under Rule 12(b)(6) 'is a harsh remedy, . . . a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Tyler v. Tsurumi (America), Inc.*, 425 Fed. Appx. 702, 704 (10th Cir. 2011) (quoting *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (citations and quotations omitted).

In evaluating a Rule 12(b)(6) motion to dismiss, a court must "consider the complaint in its entirety" and also examine documents

"incorporated into the complaint by reference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). It generally must convert a motion to dismiss to one for summary judgment when it considers materials submitted by parties that are outside the pleadings. *Alvarado*, 493 F.3d at 1215. Conversion is unnecessary if the court only considers "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Alvarado*, 493 F.3d at 1215 (internal quotation marks and citation omitted).

## Count III

In his breach of fiduciary duty claim against Penner, Salek alleges he and Penner "were joint venturers in maximizing EBITDA from transloading services and thereby maximizing the earn out payments under the Agreement and the Amended Agreements." (Dk. 1, ¶ 92). This conclusion of a joint venture is preceded by the following factual allegations:

> 88. As part of the Agreement, both Plaintiff and Defendant Penner signed employment contracts and promised that they would continue to work for Defendant Reload for a period of up to three years.
>
> 89. After entering into the Agreement, the employment contracts, and the Amended Agreements, Plaintiff and Defendant Penner both had a contractual right to receive 50% of future earn out payments of up to $4,950,000.
>
> 90. The main purpose of the employment contracts and the Amended Agreements was to maximize the likelihood that both Plaintiff and Defendant Penner would receive future earn out payments.
>
> 91. Plaintiff and Defendant Penner were in a special combination of

>two persons devoted to a specific enterprise in which profit is jointly sought without actual partnership or corporate designation.

(Dk. 1, p. 17).  Also preceding the general allegation of a joint venture, there was the incorporated allegations that Salek and Penner had co-owned Reload, that Watco purchased their shares, and that the SPA provided for Salek and Penner to receive earn-out payments based on annual earnings levels through the calendar year of 2017.  Finally, Salek alleges Penner breached his fiduciary duties by entering into a side agreement with Watco to receive earn-out payments that also resulted in Salek being denied earn out payments.

Kansas Law on Joint Ventures

Kansas law generally recognizes that "a 'fiduciary duty' exists among joint venturers."  *Terra Venture v. JDN Real Estate Overland*, 443 F.3d 1240, 1245 (10th Cir. 2006) (citations and internal quotation marks omitted).  A joint venture "is an association of two or more persons to carry out a single business enterprise for profit," and it exists "only by the agreement of the parties."  *Modern Air Conditioning, Inc. v. Cinderella Homes, Inc.*, 226 Kan. 70, 75, 596 P.2d 816 (1979).  Here is an appropriate summary of Kansas law on joint ventures:

>In Kansas, a joint venture exists where two or more corporations associate to carry out a single business enterprise for profit. When the existence of a joint venture is controverted, one can be found through the mutual acts and conduct of the parties. In determining whether a joint venture exists, courts generally look to five, non-dispositive

> factors: (1) the joint ownership and control of property; (2) the sharing of expenses, profits and losses, and having and exercising some voice in determining the division of the net earnings; (3) a community of control over and active participation in the management and direction of the business enterprise; (4) the intention of the parties, express or implied; and (5) the fixing of salaries by joint agreement.

*Paradigm Alliance, Inc. v. Celeritas Technologies, LLC*, 722 F. Supp. 2d 1250, 1263,64 (D. Kan. 2010)(footnotes and citations omitted). These five factors are "indicative of a joint venture, but no single one of which is controlling in the determination." *George v. Capital South Mortg. Investments, Inc.*, 265 Kan. 431, 448, 961 P.2d 32 (1998). "[A] joint venture may be inferred from the facts and circumstances presented at the trial which demonstrate that the parties, in fact, undertook a joint enterprise." *Id.* at 453 (citation omitted). "The requisite intent of parties required to create a joint venture may be express or implied." *Id.* In simplest terms, the courts determine the parties' intent with a focus upon whether there is "joint ownership, joint operation, and express or implied agreement to share in the profits and losses." *Nature's Share, Inc. v. Kutter Products, Inc.*, 752 F. Supp. 371, 383 (D. Kan. 1990) (citing *Yeager v. Graham*, 150 Kan. 411, 418-19, 94 P.2d 317 (1939)).

## Analysis

The defendant Penner argues the complaint offers only conclusory allegations in support of a joint venture and, therefore, the

plaintiff has no cognizable claim of a fiduciary relationship existing. Other than generally referring to the SPA and their separate employment contracts with Watco, the complaint fails, as Penner challenges, to allege any critical factors for a joint venture, such as joint ownership or control of property, sharing of expenses and losses, any voice in determining the division of their employer's earnings, or any intent by Salek or Penner to have a joint venture. Penner draws comparisons with the Tenth Circuit's analysis in *Terra Venture* and its conclusion there that no joint venture existed between the plaintiffs who had assigned their rights and interests in some commercial property and the defendants who then appointed the plaintiffs as the exclusive selling and leasing agents for developing this property and agreed to pay the plaintiffs a single development fee and a subsequent conditional earnout fee. 443 F.3d at 1242. The Tenth Circuit affirmed the district court's grant of summary judgment on this issue. *Id.* at 1245-46.

In response, Penner offers that his complaint does allege the basic elements of a joint venture:

> Plaintiff and Defendant had joint ownership of companies sold through an executory contract with the proceeds being split evenly between them. (Compl. ¶¶ 18-30). As the continued profitability of the companies was necessary for Plaintiff and Defendant to realize the benefits of the executory contract, and their mutual expertise was an integral factor in that profitability, they continued to jointly operate as managers of the sold businesses pursuant to materially identical employment contracts. (*Id.* ¶¶ 33, 88-89). Finally, as the proceeds from the sale were being split evenly, including future "earn out payments", they were clearly sharing in the profitability of the joint

9

> venture.  (*Id*. ¶¶ 23-24, 89-90, 92).  Thus, the allegations of the Complaint (which must be accepted as true) provide the necessary support to draw a reasonable inference that a joint venture giving rise to a fiduciary duty on the part of the defendant existed.

(Dk. 24, p. 2).  The plaintiff also contends he has "pled an express intention of the parties to enter into an ongoing effort to maximize the purchase price of their stock sale that involved a special combination of two persons devoted to a specific enterprise in which profit is jointly sought, and that the parties stood in a close relationship of trust and confidence." *Id.* at p. 15 (citing Comp. ¶¶ 90-93).  "Under Kansas law, '[a] fiduciary relation . . . exist[s] in cases where there has been a special confidence reposed in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence.'" *Terra Venture*, 443 F.3d at 1245 (quoting *Denison State Bank v. Madeira*, 230 Kan. 684, 692, 640 P.2d 1235, 1237 (1982)).  From this general rule, the plaintiff claims that as co-owners of Reload, Salek and Penner reposed special confidence in one another particularly when attaining the best selling price for their shares.  The plaintiff contends these fiduciary duties did not end with the SPA in that it was an executory contract with future earn-out payments.  The plaintiff alleges Penner breached his fiduciary duties by engaging in self-dealing before the earn-out period expired.

   The court is satisfied that the allegations in count three framed by the factual background allegations are not mere conclusory statements

but plausibly support a claim for breach of fiduciary duty.  As fully demonstrated in the plaintiff's response, count three identifies the agreements, highlights certain rights and duties in each, and characterizes the special confidence or venture allegedly flowing from them.  Count three certainly could have been more specific in tying the factual allegations to the different factors evidencing a joint venture or fiduciary relationship.  Still, the complaint offers enough to nudge this claim from conceivable to plausible.  The court certainly realizes the significant challenge facing the plaintiff in proving, as alleged, that a joint venture or fiduciary relationship exists under these circumstances.  This order only addresses the issue raised in the defendant's motion, that is, the sufficiency of the factual matter alleged in the complaint.  And on that issue, the court finds that the plaintiff's complaint alleges sufficient detail illuminating the claim for the court to draw a reasonable inference that a joint venture and/or a fiduciary relationship may have existed.

**MOTION TO STRIKE STANDARDS**

A "court may strike from a pleading an insufficient defense, . . . on motion made by a party . . . within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f)(2).  "Striking a pleading or part of a pleading is a drastic remedy and because a motion to strike may often be made as a dilatory tactic, motions to strike under Rule 12(f) generally are disfavored."

*Mata v. City of Farmington*, 791 F. Supp. 2d 1118, 1139-40 (D.N.M. 2011) (citations and internal quotation marks omitted). Still, a court in its discretion may strike a defense as insufficient "if no circumstances exist under which it can succeed as a matter of law." *Falley v. Friends University*, 787 F. Supp. 2d 1255, 1257 (D. Kan. 2011) (citations omitted). In practice, courts generally deny motions to strike "unless the allegations (1) have no possible relation to the controversy, and (2) may prejudice one of the parties." *Rubio ex rel. Z.R. v. Turner Unified School Dist. No. 202*, 475 F. Supp. 2d 1092, 1101 (D. Kan. 2007); see also *Home Quest Mortg., L.L.C. v. American Family Mut. Ins. Co.*, 393 F. Supp. 2d 1096, 1099–1100 (D. Kan. 2005).[2]

As their second affirmative defense, the defendants allege the plaintiff has waived his right to recover an earn-out payment as claimed in count one:

> Plaintiff had the opportunity to raise this issue under the procedures set forth in Sections 1.04.2(c) & (d) of the SPA, including challenging

---

[2]The plaintiff cites *Hayne v. Green Ford Sales, Inc.*, 263 F.R.D. 647, 649-50 (D. Kan. 2009), as support for applying *Twombly's* "plausible on its face" standard to affirmative defenses. As the most current decisions reflect, the courts in this district remain divided over *Twombly's* application to answers with more leaning against the application. *See, e.g., Bennett v. Sprint Nextl Corp.*, 2011 WL 4553055 (D. Kan. Sep. 29, 2011); *Unicredit Bank AG v. Bucheli*, 2011 WL 4036466 (D. Kan. Sep. 12, 2011); *Falley v. Friends University*, 787 F. Supp. 2d at 1257-59. This case does not require this court to weigh in on this issue, as the traditional standards governing Rule 12(f) are determinative of the motion. *See U.S. ex rel. Minge v. TECT Aserospace, Inc.*, 2011 WL 2473076 at *3 (D. Kan. 2011).

> the EBITDA statement provided by Watco.  He did not do so.  He has therefore waived his right to try to bring a claim for past earnout payments under the clear terms of the SPA.

(Dk. 19, p. 11).  Section 1.04.2(d) provides in relevant part that 30 days after delivery of the EBITDA Statement upon the shareholders, the Statement will become "final and binding upon the parties . . . unless" the shareholders provide written notice disagreeing with the Statement.  (SPA, Dk. 25-1 p. 15).  This paragraph also specifies:

> Any EBITDA Notice of Disagreement shall (i) specify in reasonable detail the nature of any disagreement so asserted, (ii) only include disagreements which are based on the EBITDA Statement not having been prepared in accordance with this Section 1.04.2 or which are based on mathematical errors, and (iii) be accompanied by a certificate of Shareholders' independent auditors or other advisors that such auditors and advisors concur with the positions taken by Shareholders in the EBITDA Notice of Disagreement.

*Id.* This paragraph also lays out a procedure for the parties' resolving their disagreement with the EBITDA Statement.  *Id.*  Section 1.04.2(e) defines EBITDA "for purposes of this Section 1.04.2" to "mean Net Income of the Companies for such calendar year . . . ."  *Id.* at p. 16.  The SPA identifies "Companies" as Reload, Inc. and Reload Express, Inc.  *Id.* at p. 6.

The plaintiff moves to strike this defense as count one "does not involve" an accounting issue, accounting standard, or mathematical calculation that would be controlled by § 1.04.2(d).  In count one, the plaintiff alleges that the defendants were in breach by excluding the "EBITDA from the Stanley Facility, the Stroud Facility, and other transloading

13

facilities" in calculating the plaintiff's earn-out payments. (Dk. 1, ¶¶ 77, 79). Section 1.04.2 of the SPA sets out the agreed terms for calculating earn-out payments, and paragraph (d) is part of that section. Consequently, the court cannot say the defendants' waiver defense based on paragraph (d) has no possible relation to the controversy.

The narrow standards and limited review that govern a motion to strike do not justify the extended inquiry that would be required to resolve the plaintiff's arguments for construing § 1.04.2(d). This is not a plain and simple instance of interpreting a provision that expressly limits disputes to accounting issues or standards but rather encompasses "any disagreement . . . based on the EBITDA Statement not having been prepared in accordance with this Section 1.04.2 . . . accompanied by a certificate of Shareholders' independent . . . advisors that such . . . advisors concur with the positions taken." (Dk. 25-1, p. 15). Arguably for purposes of this affirmative defense, to be in accordance with § 1.04.2, the EBITDA Statement must set forth the EBITDA "as defined in Section 1.04.2(e)." *Id*. Thus, there may be circumstances for arguing that the plaintiff's disagreement with Watco for excluding the EBITDA from the Stanley and Stroud facilities from the EBITDA Statement would come within the terms of Section 1.04.2(d). As the defendants point out, none of the case law cited by the plaintiff as interpreting similar provisions was in the context of a

motion to strike an affirmative defense.

Finally, the court is not persuaded that the plaintiff will suffer any real delay, prejudice or confusion from this defense now remaining in the case for discovery purposes.  The plaintiff's asserted need for affirmative declaratory relief from this provision for future earn-out payments is not the kind of prejudice generally contemplated by a motion to strike.  The motion is denied.

IT IS THEREFORE ORDERED that the defendant Phillip A. Penner's motion to dismiss (Dk. 20) is denied;

IT IS FURTHER ORDERED that plaintiff's motion to strike (Dk. 26) is denied.

Dated this 22nd day of February of 2012, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge